# United States Court of Appeals
## For the First Circuit

No. 15-2262

UNITED STATES OF AMERICA,

Appellee,

v.

OSCAR DELGADO-SÁNCHEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Thomas J. O'Connor, Jr. for appellant.
Mainon A. Schwartz, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

February 17, 2017

**KAYATTA**, **Circuit Judge**.  Oscar Delgado-Sánchez ("Delgado") pled guilty to one count of being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Delgado now appeals his upwardly variant sentence of seventy-two months in prison.  He contends that his guidelines sentencing range was miscalculated because the district court erroneously found at least one of his prior convictions to be for a "crime of violence." He also takes issue with what he claims were procedural missteps at sentencing, and he argues that the district court based his above-guidelines sentence on factors that should not have been considered.  For the following reasons, we disagree and affirm Delgado's sentence in full.

## I.  Background

In March 2015, police obtained a search warrant for Delgado's residence after they observed him carrying an AK-47 outside of his home.  When officers arrived to execute the search, Delgado allowed them inside, confessed that he had the firearm, and told the officers where they could find an additional magazine and ammunition.  The police arrested Delgado and seized the weapon, which was capable of automatic fire and which was loaded with one magazine containing twenty-nine rounds of ammunition.  They also seized one more magazine and sixteen additional rounds of ammunition.  Delgado pled guilty to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The U.S. Probation Office's presentence investigation report assigned Delgado a criminal history score of seven, the sum of the criminal history points attributable to three prior convictions. The first conviction, worth three criminal history points under U.S.S.G. § 4A1.1(a), arose out of a 2008 arrest in San Lorenzo, Puerto Rico, for violating Article 404 of the Puerto Rico Controlled Substances Law, P.R. Laws Ann. tit. 24, § 2404. The second conviction, also worth three criminal history points under U.S.S.G. § 4A1.1(a), arose out of Delgado's 2009 arrest in Las Piedras, Puerto Rico. In that case, Delgado pled guilty to one count of violating Article 198 of the Puerto Rico Penal Code (Robbery) ("Article 198"), P.R. Laws Ann. tit. 33, § 4826, and three counts of violating Article 5.15 of the Puerto Rico Weapons Law (Discharging or Pointing Firearms) ("Article 5.15"), P.R. Laws Ann. tit. 25, § 458n(a). The presentence report explained that "[a]ccording to certified court documents," Delgado and an accomplice "through the use of violence and intimidation" and "using a dangerous weapon . . . robbed $60.00 in cash . . . in the immediate presence of [a person]," and Delgado "aimed [a] firearm at [the person] and announced the robbery."

Delgado's third conviction, worth one criminal history point pursuant to U.S.S.G. § 4A1.1(e), followed a guilty plea to three counts of robbery under Article 198 and three counts of unlawfully discharging or pointing a firearm in violation of

- 3 -

Article 5.15. According to the presentence report, "certified court documents" revealed that these offenses arose out of two separate robberies and a shooting in Yabucoa on March 24, 2009. First, Delgado "robbed a cash register, $413[] in cash and between 12 and 15 cigarette boxes from [a store] through the use of violence and/or intimidation in the immediate presence of [a person]. He also robbed $177 in cash belonging to [another person] through the use of violence and/or intimidation." Second, at 4:15 P.M., Delgado, "in possession of a black 9mm firearm," robbed a business of all of the proceeds from the day's sales and some horse products totaling about $800. During the robbery, Delgado asked an individual victim where he could find the safe and instructed that individual to "hit the safe in order to open it and give me all the money." Finally, "[a]ccording to certified court documents," Delgado "shot 4 to 5 rounds into the air from a black 9mm firearm" at 5:00 P.M.

The presentence report also alerted the parties and the court that probation was aware that Delgado had been arrested on at least four other occasions.

First, the report indicated that Delgado had been arrested in San Lorenzo in July 2008 and charged with two counts of violating the Puerto Rico Weapons Law for possessing and carrying without a license a loaded weapon with an obliterated

- 4 -

serial number.  These charges, probation reported, were dismissed in a preliminary hearing upon a finding of no probable cause.

Second, the report stated that Delgado was arrested in Yabucoa in November 2008 on grounds that (1) he committed two violations of the Puerto Rico Controlled Substances Law, and (2) he possessed two loaded firearms, one of which he used to rob a bar of cash and goods "through the use of violence and intimidation" in violation of the robbery statute and the Weapons Law.  The Controlled Substances Law charges were dismissed for lack of probable cause, and, because Delgado was detained for more than thirty days without a preliminary hearing, the robbery and firearms charges were dismissed pursuant to Rule 64(n)(5) of the Puerto Rico Rules of Criminal Procedure, P.R. Laws Ann. tit. 34, App. II, § 64(n)(5).

Third, the report detailed another November 2008 arrest in Yabucoa on charges that Delgado violated two provisions of the Weapons Law by carrying two loaded firearms without a license, one of which had an obliterated serial number.  These charges were dismissed under the Commonwealth's Rule 64(n)(4), id. § 64(n)(4), because Delgado was not tried within 120 days after his arraignment.

Fourth and finally, the report alerted the parties that probation was aware that Delgado was facing pending charges stemming from a December 2013 arrest.  In that case, Delgado was

- 5 -

charged with discharging or pointing a firearm in violation of Article 5.15 and unlicensed carrying/using of a firearm in violation of Article 5.04 of the Weapons Law, along with Aggravated Robbery in violation of Article 190(e) of the Puerto Rico Penal Code. The report noted that Delgado's trial on these charges was scheduled for early September 2015.

In a separate section of the presentence report, probation concluded that Delgado should be subject to U.S.S.G. § 2K2.1(a)(3), which provides that when an individual is convicted of an offense involving certain types of firearm and was previously convicted of a felony "crime of violence," his base offense level is twenty-two. Probation did not specify which of Delgado's previous convictions served as the basis for the "crime of violence" designation. Subtracting three levels based on Delgado's demonstrated acceptance of responsibility, probation proposed that Delgado's total offense level should be set at nineteen.

In the nearly two months that passed between the date he was served with the presentence report and the date he appeared for sentencing, Delgado lodged no objections to the presentence report. Rather, he submitted a sentencing memorandum limited to urging the court to engage in a downward variance on account of a chronic medical condition (the nature of which is not germane to this appeal). When Delgado appeared before the district court for

sentencing on September 24, 2015, his attorney informed the court that he had nothing to say on Delgado's behalf "other than what I have expressed in my sentencing memorandum." Delgado, too, declined the court's offer to speak on the record.

The district court determined that the presentence report's calculations were correct: Delgado's base offense level was twenty-two "because Mr. Delgado has been convicted of possessing a firearm which is described in Title 26, United States Code, Section 5845(a) after having been convicted for a crime of violence, robbery and brandishing a firearm during the robbery." With adjustments for acceptance of responsibility, his total offense level was nineteen. And he was in Criminal History Category IV with a criminal history score of eight--the seven points described above plus one additional point that Delgado earned when a jury convicted him at some point in the intervening months on the charges arising from his December 2013 arrest. The advisory guidelines, the court found, thus recommended a sentence of forty-six to fifty-seven months' imprisonment, plus a fine and a term of supervised release.

The district court then proceeded to consider the sentencing factors in 18 U.S.C. § 3553(a). The court took note of Delgado's age, education, employment, and history of drug addiction. It also observed that Delgado had numerous convictions and dismissed charges for firearms offenses, and it expressed

concern with Delgado's statement to probation that he committed robberies because he "liked to." Finding that, in light of these facts and the Commonwealth's serious gun violence problem, a sentence within the proposed guidelines range of forty-six to fifty-seven months would not achieve the goals of punishment, the district court sentenced Delgado to seventy-two months' imprisonment followed by a three-year term of supervised release. Delgado timely appealed.

## II. Discussion

### A. "Crime of Violence"

Delgado's lead argument is that the district court erred in calculating his guidelines sentencing range because it improperly classified one of his prior convictions as a conviction for a "crime of violence" under U.S.S.G. § 2K2.1(a)(3). That provision advises courts sentencing defendants convicted of certain firearms offenses to assign a base offense level of twenty-two if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." A felony "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); see also id. § 2K2.1 cmt. n.1

(adopting definition of "crime of violence" in § 4B1.2).[1]  Physical force is "<u>violent</u> force--that is, force capable of causing physical pain or injury to another person."  <u>United States</u> v. <u>Martinez</u>, 762 F.3d 127, 133 (1st Cir. 2014) (quoting <u>Johnson</u> v. <u>United States</u>, 559 U.S. 133, 140 (2010)).  If a criminal defendant has no prior convictions, or none of his prior convictions is for a crime of violence, § 2K2.1(a)(3) cannot be applied to set the defendant's base offense level.

Delgado did not raise this argument at sentencing. Indeed, he raised no objections at all at sentencing.  For this reason, we are faced at the outset with a dispute concerning whether, and by what standard, we may review Delgado's arguments on appeal.

Ordinarily, a party who fails to lodge an objection or raise an argument below is deemed to have forfeited the argument and faces plain error review.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Sánchez-Berríos</u>, 424 F.3d 65, 74 (1st Cir. 2005).  But where a party

_____

[1] The guidelines also provide an alternative definition of a felony "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2) (2015).  This case does not involve burglary of a dwelling, arson, extortion, or the use of explosives, and the government has waived any argument that one or more of Delgado's past convictions is for an offense "that presents a serious potential risk of physical injury to another."

"intentional[ly] relinquish[es] or abandon[s] . . . a known right" and that right is waivable, he may not revive his waived argument on appeal at all. United States v. Olano, 507 U.S. 725, 732–34 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). We treat differently waived and forfeited claims because "waiver implies an intention to forgo a known right, whereas forfeiture implies something less deliberate--say, oversight, inadvertence, or neglect in asserting a potential right." United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009). The government asks us to deem waived and therefore not reviewable Delgado's challenge to the presentence report's designation (and the district court's decision to adopt it) that § 2K2.1(a)(3) applies. Delgado admits that he failed to preserve the arguments he advances on appeal, but nevertheless urges us to review the district court's decision for plain error.

We have noted that "a powerful case for waiver" is presented where a defendant "eschews a warrantable objection to a conclusion reached in a presentence report" because doing so "lulls both the prosecution and the sentencing court into what will prove to be a false sense of security if he is later allowed to do an about-face." United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006). This argument carries particular weight where, as here, "given the appellant's ready acquiescence in the characterization of his earlier conviction . . . few prosecutors

- 10 -

would have felt a need to bring in the original record of conviction and few judges would have felt a responsibility to probe the point more deeply." Id. And, as the government points out, Delgado may have had some incentive not to encourage the district court to delve deeply into his criminal history: in light of his having been convicted on multiple occasions of both robbery and discharging or pointing firearms, it is possible that the district court might have found that his record showed he had committed more than one crime of violence and thus set his base offense level even higher than the presentence report recommended. See U.S.S.G. § 2K2.1(a)(1) (setting the base offense level at twenty-six for defendants convicted of an offense involving a firearm described in 26 U.S.C. § 5845(a) who have been convicted of two or more felony crimes of violence).

Still, "[w]here a defendant's claim would fail even if reviewed for plain error, we have often declined to decide whether the defendant's failure to raise the issue below constituted waiver or mere forfeiture." United States v. Acevedo-Sueros, 826 F.3d 21, 24 (1st Cir. 2016) (citing United States v. Aguasvivas-Castillo, 668 F.3d 7, 13-14 (1st Cir. 2012)); see also, e.g., United States v. Delgado-López, 837 F.3d 131, 135 n.2 (1st Cir. 2016); United States v. Arsenault, 833 F.3d 24, 28 & n.2 (1st Cir. 2016). Because Delgado's arguments fail under plain error review, we decline to decide whether Delgado's failure to object to the

- 11 -

presentence report constitutes a waiver. Instead, applying plain error review, we ask whether Delgado can show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." Arsenault, 833 F.3d at 29 (alteration in original) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015)).

To determine whether a defendant's prior convictions were for crimes of violence, we apply the "categorical approach" set forth by the Supreme Court in Taylor v. United States, 495 U.S. 575, 600-02 (1990). In short, we "look to the elements of the prior convictions as defined by the relevant statute[s]--not to the particular facts underlying the convictions." United States v. Castro-Vázquez, 802 F.3d 28, 35 (1st Cir. 2015) (citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)). If the state (or, as in this case, the Commonwealth of Puerto Rico) defines the crime of conviction broadly enough that it may be committed without the "use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), then the conviction cannot be used to set the defendant's base offense level under § 2K2.1(a)(3) based on it being for a "crime of violence" under § 4B1.2(a)(1). United States v. Serrano-Mercado, 784 F.3d

838, 842–44 (1st Cir. 2015), cert. denied, No. 16-0237, 2017 WL 160457 (Jan. 17, 2017).

If the statute under which the defendant was previously convicted is divisible, meaning "it comprises multiple, alternative versions of a crime not all of which qualify as a predicate offense," courts apply a "modified" categorical approach. Castro-Vázquez, 802 F.3d at 35; see also Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). Under this approach, we may refer to "Shepard" documents, see Shepard v. United States, 544 U.S. 13, 17, 25–26 (2005), including "charging documents, plea agreements, plea colloquies, jury instructions, and verdict forms," in order "to determine which of a statute's alternative elements formed the basis of the prior conviction." Castro-Vázquez, 802 F.3d at 35.

The district court's explanation for applying § 2K2.1(a)(3) to Delgado was that he had previously been convicted of "a crime of violence, robbery and brandishing a firearm during the robbery." But prior to Delgado's conviction in this case, he had never been convicted of any single offense whose elements could be said to include both the forceful taking of property and the brandishing of a firearm. See P.R. Laws Ann. tit. 33, § 4826 (robbery does not involve brandishing of a firearm); P.R. Laws Ann. tit. 25, § 458n(a) (brandishing need not occur in the course of a robbery to be unlawful discharge or pointing of a firearm).

- 13 -

Delgado argues that this error in describing what conviction the court found to be a crime of violence requires that the finding be set aside.

We disagree. True, the district court could have been more explicit when it identified the predicate offense that it viewed as justifying the application of § 2K2.1(a)(3). But we think it reasonably clear, based on the way the court described the crime, that the court was referring to the several convictions that arose out of Delgado's March 2009 arrest for aiming a firearm at a person and announcing and carrying out a robbery. As a result of that arrest, Delgado pled guilty to one count of robbery in violation of Article 198 and three counts of discharging or pointing a firearm in violation of Article 5.15. We encourage district courts to identify predicate crimes of violence with care and precision, but we do not find any error here, where the record makes plain our task on appeal.

Our discussion begins and ends with Delgado's 2009 convictions under Article 5.15,[2] which provides, in relevant part:

> (a)  Any person shall be found guilty of a felony . . . who, except in cases of self defense or defense of third parties, or actions in the performance of official duties or legitimate sports activities:

---

[2] Because we find that applying U.S.S.G. § 2K2.1(a)(3) based on Delgado's conviction under Article 5.15 was not plainly erroneous, we decline to address whether robbery under Article 198 is a "crime of violence" justifying application of U.S.S.G. § 2K2.1(a)(3).

> (1) Willfully fires any weapon in a public place or any other place where there is any person who could be harmed, even though he/she causes no harm whatsoever to any person, or
>
> (2) intentionally, although without malice aforethought, points a weapon towards a person, even though he/she causes no harm whatsoever to any person.

P.R. Laws Ann. tit. 25, § 458n(a). In his opening brief, Delgado argued that a conviction under Article 5.15 cannot be a predicate offense meriting application of § 2K2.1(a)(3) because it "can be completed without the intentional use of violen[t] force on any individual." At oral argument and on reply, Delgado expounded this argument, claiming that Article 5.15 is an indivisible statute that sets forth a single crime that is not categorically violent. He also argued that whether indivisible or divisible, Article 5.15 cannot serve as a predicate offense justifying application of § 2K2.1(a)(3).

We are unpersuaded by Delgado's contention that Article 5.15 is indivisible. Where a statute is indivisible but lists multiple, alternative means of satisfying an element, one or more of which can be achieved without violence, the crime defined therein is not categorically a "crime of violence" even if the defendant committed it by violent means identified in the statute. Cf. Mathis, 136 S. Ct. at 2251. A divisible statute, on the other

- 15 -

hand, "list[s] elements in the alternative, and thereby define[s] multiple crimes"; if one of those crimes is categorically violent, it can serve as a predicate offense so long as the defendant's conviction under the statute was for that version of the crime. Id. at 2249. To determine whether statutory alternatives are "elements" or "means," we look to case law interpreting the statute, unless the "statute on its face . . . resolve[s] the issue." See id. at 2256. When the statute and the case law do not provide a clear answer, courts may look to other relevant documents for the purpose of determining what elements must be proved to secure a conviction under the statute. Id. at 2256–57.

Neither party points us to any case law interpreting Article 5.15, but the statute's plain text and structure strongly suggest that it is divisible, providing two alternative sets of elements for two different crimes. The statute sets a criminal penalty for two entirely distinct courses of conduct with entirely distinct required mental states. The statute's structure makes clear that a defendant is guilty of "discharging" but not "pointing" when he willfully fires a weapon in a public place but does not aim the weapon at anyone, and that a defendant is guilty of "pointing" but not "discharging" when he intentionally aims a firearm at another person but does not fire it.

The Commonwealth's pattern jury instructions for Article 5.15 suggest the same. In the English-language translation

Delgado has provided,[3] judges are tasked with determining which crime the government charged under the statute and describing only that crime to the jury.  The instructions then provide the judge with a menu of options, one of which is "[d]ischarging a weapon in a public place or in another location where a person could have suffered harm, even if no person was harmed," and another of which is "[i]ntentionally, even if without malice, aiming a firearm

---

[3]  The translation reads as follows:

>    In this case, the defendant is charged with the crime of: [The Judge shall provide the instruction that corresponds to the facts charged.]

>>    1)   Discharging a weapon in a public place or in another location where a person could have suffered harm, even if no person was harmed.

>>    2)   Intentionally, even if without malice, aiming a weapon towards a person, even if no person was harmed.
>>    . . . .

>>    4)   Intentionally, even if without malice, aiming a firearm towards a person, even if no person was harmed.

>    The essential elements of this offense are the following:

>>    1)   [Aiming]   [Discharging]   a [weapon] [firearm].

>>    2)   In a public place or any other place where a person could suffer harm.

- 17 -

towards a person, even if no person was harmed." The judge is directed to choose whether the criminal act charged is "aiming" or "discharging" and instruct the jury about the applicable "essential element[]" accordingly. Delgado contends that the instructions show the statute to be indivisible, but they do not; rather, to the extent they lend any insight, they confirm our reading by providing alternative versions of the crime's elements, negating any possibility that a jury need not find unanimously that the selected version has been proven beyond a reasonable doubt.

Having determined the statute is divisible, we proceed to determine whether either version of the crime provided under Article 5.15 is categorically a "crime of violence." The elements of the offense described in Article 5.15(a)(2) (intentionally pointing a weapon towards a person) might comprise one. The government argues that to point a firearm at someone intentionally--when not done in self-defense, defense of another, or in the performance of official duties or legitimate sports activities--is, in all cases, to threaten the use of physical force against that person. Delgado, in opposition, contends, first, that Puerto Rico's decision to explicitly provide in the statute that pointing under Article 5.15 can be committed without malice aforethought shows that the crime can be committed unintentionally or without the threatened use of force. He argues, second, that

pointing is not categorically a crime of violence because a person can be convicted under this version of the offense even where, for instance, the victim is unaware that a gun is being pointed at him, or is aware of the pointing but knows that the offender is joking or the gun is not loaded.  This, he argues, does not constitute use, attempted use, or threatened use of force against the person of another.

Delgado's first argument is easily dismissed.  The definition of a crime of violence does not include malice as an element; intentionality suffices.  See, e.g., United States v. Tavares, 843 F.3d 1, 13 (1st Cir. 2016) (when performed with a dangerous weapon, "'the intentional and unjustified use of force upon the person of another, however slight'--constitutes a crime of violence under § 4B1.2(a)(1) of the Guidelines"); United States v. Whindleton, 797 F.3d 105, 113–16 (1st Cir. 2015) (same), cert. dismissed, 137 S. Ct. 23 (2016), and cert. denied, 137 S. Ct. 179 (2016).

Delgado's second argument, however, is not so easily dismissed.  The challenge is how to define the phrase "threatened use of physical force" in U.S.S.G. § 4B1.2(a)(1).  One might read the phrase narrowly to require "communicat[ing] intent to inflict harm," see Threat, Black's Law Dictionary (10th ed. 2014) (definition #1), in which case pointing a firearm at a person without that person's knowledge--arguably a method of committing

the offense described in Article 5.15(a)(2)--would not qualify. Or, one might read the phrase as also including the creation of some "thing that might well cause harm." Id. (definition #3). If this broader definition of "threat" is the one we should be using to interpret "threatened use of force" in the guidelines, a violation of Article 5.15(a)(2) would seem to fit. It would make no difference, for the purposes of determining whether pointing "might well cause" the use of force against the victim, whether the person at whom the firearm is aimed is aware of the threat that has been created.

Ultimately, we need not definitively answer this question. Delgado points to no precedent (nor are we aware of any) that construes U.S.S.G. § 4B1.2(a)(1) as excluding the latter definition of a "threatened use of physical force against the person of another." See also United States v. Cortez-Arias, 403 F.3d 1111, 1116 (9th Cir. 2005) (observing that "'threatened use of physical force against the person of another' must logically include . . . acts suggesting that physical force against [a] person may be impending").[4] We therefore cannot say that the

---

[4] The Ninth Circuit has abrogated Cortez-Arias, holding that the predicate state-law offense at issue in that case does not categorically constitute a crime of violence because it may be committed recklessly. See United States v. Narvaez-Gomez, 489 F.3d 970, 976–77 & n.3 (9th Cir. 2007). This development does not affect our analysis, which relies on Cortez-Arias only for the narrow proposition that the district court did not plainly err in

- 20 -

district court committed error that was clear or obvious. See United States v. Vanvliet, 542 F.3d 259, 270 (1st Cir. 2008) (finding the practice of not giving an Allen charge before a jury retires not plainly erroneous because "[w]e have not even discussed the desirability of this practice in our own circuit precedents"); United States v. Marcano, 525 F.3d 72, 74 (1st Cir. 2008) ("[P]lain error cannot be found in case law absent clear and binding precedent . . . ."); United States v. Caraballo-Rodriguez, 480 F.3d 62, 73 (1st Cir. 2007) ("[S]ince we have not yet adopted the [statutory] construction [defendant] urges, there is no plain error.").

We are left to decide only whether any of Delgado's convictions under Article 5.15 was for intentionally pointing a firearm at another person. The presentence report's findings, which the district court adopted as its own findings of fact with no objection from Delgado, state that Delgado pled guilty to three counts of violating Article 5.15 and that "certified court documents" show Delgado aimed a firearm at a person as he announced his intent to rob her. But the presentence report fails to identify which certified court documents it is referring to, and it does not attach or include any so-called Shepard documents. Whether the presentence report is describing factual conduct or

declining to read "threatened use of physical force" to require communication of intent to inflict harm.

- 21 -

describing the actual offense charged or admitted by Delgado remains unclear.

Delgado, however, makes no claim that, had the district court examined any Shepard documents, it would have discovered that the presentence report inaccurately characterized the charged offense. Therefore, even assuming that the district court clearly erred by failing, sua sponte, to require the government to clear up the problematic ambiguity in the presentence report, Delgado's challenge falls short on the third prong of plain error review. That prong, in this context, requires him to make a showing he does not even attempt to make: that he was actually prejudiced by the absence of the Shepard documents describing the offense to which he pled. Serrano-Mercado, 784 F.3d at 848.

## B.  Other Alleged Procedural Errors

Delgado claims his sentence is procedurally unreasonable on five other bases, all of which, for the reasons already stated, we review for plain error. See United States v. Cortés-Medina, 819 F.3d 566, 569 (1st Cir.), cert. denied, 137 S. Ct. 410 (2016). His first few arguments concern a second presentence report that was docketed on the day of his sentencing. This second report was identical to the presentence report Delgado received two months earlier in all but four respects. First, it reclassified the charges stemming from Delgado's December 2013 arrest as a prior conviction worth one criminal history point (rather than as pending

- 22 -

charges) because between the time the first presentence report was filed and the date of sentencing, a jury had convicted Delgado on those charges. Second, the report added the point associated with that conviction to the criminal history score previously calculated, raising Delgado's score from seven to eight. Third, the report represented that Delgado's first Yabucoa conviction, which had originally been assigned one criminal history point, was worth zero criminal history points. Fourth, the report included a paragraph addressing the medical issues raised in Delgado's sentencing memorandum and discussed on the record at sentencing.

Delgado argues that it was error for him to discover only on the date of sentencing that an additional criminal history point had been inserted into a new presentence report upon which the court would rely. He also argues that the district court erred because it failed to ask him at sentencing whether he had discussed the new presentence report with his attorney.

We doubt that any error occurred here at all in light of the fact that the new report appears to have been prepared after sentencing. During the sentencing colloquy, the district court observed that it lacked medical records confirming that Delgado suffered from a medical condition. Delgado's counsel informed the court that he had brought with him to the hearing a record from an emergency visit Delgado had made to Ryder Hospital in Bayamón, Puerto Rico. Delgado's counsel delivered the medical record to

the court and agreed, in open court, to furnish a copy to probation. The new report, in turn, noted that "[d]uring sentencing, defense counsel provided the Court and the undersigned with a copy of the defendant's record at the Emergency Department of the Ryder Hospital" and summarized the contents of the medical record delivered at sentencing. In other words, the new presentence report refers retrospectively to the sentencing hearing, so it seems unlikely that the report was available to the district court at sentencing.

Moreover, aside from the new report's recalculation of the criminal history points attributable to the first Yabucoa conviction (which we will discuss momentarily), the new report differed from the old one only by including a reference to medical records that Delgado's counsel asked be added to the presentence report and by confirming a new conviction that had occurred between the production of the first report and the sentencing hearing. The conviction was discussed at sentencing, and Delgado does not dispute either that it did in fact occur or that it was worth one criminal history point. Even if one were to assume error here, prejudice would be lacking.

Delgado does challenge the inconsistent treatment of his criminal history score from one presentence report to the other, and he disputes the district court's calculation of his criminal history score at sentencing. These claims, and the array of others

Delgado makes concerning his criminal history score, all boil down to an argument that he was assigned eight criminal history points "when he had 7 at most."

We need not determine whether Delgado's correct criminal history score is seven or eight. We have previously held that a court does not commit plain error when it incorrectly calculates and applies a criminal history score that nonetheless results in the defendant being placed in the correct Criminal History Category, because a Criminal History Category recommends one guidelines sentencing range in all cases, irrespective of the defendant's criminal history score. See United States v. Albanese, 287 F.3d 226, 229 (1st Cir. 2002) (per curiam). Delgado concedes on reply that by any calculation, he would have been placed in Criminal History Category IV. "Thus, even assuming error occurred, it was not prejudicial because it did not affect [Delgado's] sentence." Id.

For his fourth argument that his sentence is procedurally unreasonable, Delgado claims that it was error for the district court to take note of Puerto Rico's significant problem with gun violence. Our precedent flatly rejects this argument. See, e.g., United States v. Narváez-Soto, 773 F.3d 282, 286 (1st Cir. 2014) ("In weighing the impact associated with a particular crime, a sentencing court may consider the pervasiveness of that type of crime in the relevant community.").

Delgado's final procedural unreasonableness argument is that the district court plainly erred in placing weight on Delgado's dismissed weapons charges.  We confronted a similar argument in Cortés-Medina.  In applying plain error review, we noted that, in light of the Supreme Court's holding in United States v. Watts, 519 U.S. 148 (1997) (per curiam), "the Supreme Court might well hold that a sentencing court may not accord any significance to a record of multiple arrests and charges without convictions unless there is adequate proof of the conduct upon which the arrests or charges were predicated." Cortés-Medina, 819 F.3d at 570.  But we also observed that "our own precedent contains dicta, repeated several times, positing that a series of arrests 'might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions.'"  Id. (quoting United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012)).  We "caution[ed] district courts against placing weight on such speculation," but because the state of the law was unclear, we found that the district court did not plainly err.  Id.

The district court here sentenced Delgado eight months before we issued our decision in Cortés-Medina, so, like the district court in that case, it did not have any reason to know that we would discourage district courts from placing weight on unsubstantiated charges.  Still, plain error review requires us to evaluate whether the law is clear now, at the time we are

- 26 -

conducting appellate review, regardless of whether the law was unclear at the time of sentencing. See Henderson v. United States, 133 S. Ct. 1121, 1127 (2013). Delgado urges us to find that, in the wake of Cortés-Medina, inferring that past arrests suggest a pattern of criminal behavior is a clear error of law.

We find that it is not. Cortés-Medina held only that the law on this question was unclear. True, Cortés-Medina certainly warns district courts that, when the occasion presents itself, we very well may sustain a preserved challenge to a sentence that treats arrests as proof of unlawful conduct or evidence that a defendant is likely to recidivate. But Delgado's plain-error appellate challenge provides no such occasion.

## C. Substantive Unreasonableness

Finally, Delgado contends that his sentence is substantively unreasonable as a result of the combined effects of the alleged errors discussed above, and because the district court did not provide an explanation sufficient for the sentence it was imposing to be reviewed effectively on appeal. Having already found that the district court did not plainly err in its calculations and evaluation of the sentencing factors under 18 U.S.C. § 3553(a), we need not tarry here. The district court adequately explained itself: Upon accurately calculating Delgado's guidelines sentencing range, the court measured the need for additional specific deterrence and evaluated the seriousness

of the offense by explaining the impact of crimes like this one in Puerto Rico. It is well established in this circuit that a sentence is substantively reasonable "so long as it rests on a 'plausible sentencing rationale' and embodies a 'defensible result.'" Ruiz-Huertas, 792 F.3d at 228 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). The district court's sentence does both. It is accordingly not substantively unreasonable.

### III. Conclusion

For the foregoing reasons, we affirm Delgado's sentence in all respects.