# United States Court of Appeals
## For the First Circuit

Nos. 23-1094
     23-1104

JONATHAN MULLANE,

Plaintiff, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE; UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Kayatta, Lynch, and Montecalvo,
Circuit Judges.

Thomas A. Burns, with whom Burns, P.A. was on brief, for
appellant.
Michael P. Sady, Assistant United States Attorney, with whom
Joshua S. Levy, Acting United States Attorney, was on brief, for
appellees.

August 23, 2024

**MONTECALVO, <u>Circuit Judge</u>**.  Plaintiff-appellant Jonathan Mullane was briefly employed by defendant-appellee the United States Department of Justice ("DOJ") as a law student intern in 2018.  The DOJ terminated him from that role, and the United States Securities and Exchange Commission ("SEC") later rescinded Mullane's internship offer for an upcoming term.  Mullane requested and obtained documents related to his termination from the DOJ and SEC pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  But in bringing this suit, Mullane maintained that the DOJ and SEC failed to conduct adequate searches and improperly withheld documents to which he was entitled under these statutes.

The agencies moved for summary judgment, and the district court eventually granted their motions in full.  Having dismissed his appeal as to the SEC, Mullane now appeals the district court's dismissal with respect to the DOJ only.  For the reasons explained below, we affirm the district court's dismissal of Mullane's FOIA and Privacy Act claims.

## I. Background

In spring 2018, Mullane was a law student at the University of Miami Law School and worked for approximately four months as an intern for the DOJ in the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL").  <u>Mullane v. Breaking Media, Inc.</u>, 433 F. Supp. 3d 102, 107 (D. Mass. 2020).

- 2 -

During his internship, Mullane engaged in ex parte communications with a law clerk to Judge Federico Moreno, a district court judge in the Southern District of Florida, regarding a pro se case he had filed that was pending before Judge Moreno. Id. Upon learning of Mullane's conduct, the DOJ terminated Mullane from his internship, and the SEC later rescinded its internship offer to Mullane for an upcoming term.[1] Id. at 107-08.

On October 12 and October 14, 2018, Mullane sent FOIA and Privacy Act requests to the DOJ seeking records related to his employment and termination. In particular, Mullane requested all internal communications from DOJ employees about him and the Judge Moreno incident. Between December 2018 and April 2019, the DOJ corresponded with Mullane about his FOIA request, and the DOJ initially produced only two pages of responsive documents. Deeming the DOJ's searches and document production to be insufficient, Mullane brought suit against the DOJ under FOIA and the Privacy Act in November 2019.

The DOJ later produced approximately 4,300 pages of information to Mullane. But the DOJ also noted that it withheld or redacted certain documents, claiming it was exempt from disclosing them to Mullane under FOIA and/or the Privacy Act.

---

[1] Because Mullane has dismissed his appeal as to the SEC, we frame the rest of our recitation of facts and analysis as if Mullane's claims were brought against the DOJ alone.

In July 2020, the DOJ moved for summary judgment on Mullane's FOIA and Privacy Act claims. After full briefing and a hearing on the DOJ's motion for summary judgment, on March 19, 2021, the district court largely granted summary judgment in favor of the DOJ, dismissing nearly all of Mullane's FOIA claims and the entirety of his Privacy Act claim. The court's limited denial of summary judgment centered on its conclusion that the DOJ improperly withheld or redacted several documents without appropriately describing the pertinent FOIA exemptions in its Vaughn index.[2] In addition, the court denied Mullane's request for leave to amend his complaint as futile and untimely. Accordingly, the court gave the DOJ until April 16, 2021 to either produce the withheld/redacted documents to Mullane or update its Vaughn index to better explain its reasons for invoking the FOIA exemptions.

On April 16, 2021, the DOJ filed its revised Vaughn index and produced a few additional documents to Mullane. On May 3, 2021, the court issued a text-only order indicating that, after reviewing the DOJ's revised Vaughn index, it was "inclined to consider summary judgment" on the DOJ's withholdings/redactions pursuant to the deliberative process exemption previously

_____

[2] A Vaughn index is the method by which a FOIA respondent "provides a broad description of the requested material or information, and the agency's reason for withholding each document or portion of a document." Carpenter v. U.S. Dep't of Just., 470 F.3d 434, 442 (1st Cir. 2006).

identified as deficient and ordered the DOJ to move for summary judgment by May 14, 2021. Obeying the district court's directive, the DOJ filed a second summary judgment motion. After full briefing, the district court granted summary judgment to the DOJ and dismissed the remainder of Mullane's case in February 2022. Mullane timely appealed the district court's March 2021 and February 2022 summary judgment orders, its denial of his motion for reconsideration of its summary judgment orders, and its denials of his motion for in camera review and request for a judicial notice hearing. Eleven days after filing his notice of appeal, Mullane moved the district court to set aside the judgment dismissing his case under Federal Rule of Civil Procedure 60. On January 25, 2023, the court denied Mullane's Rule 60 motion in a one-line, text-only order. Mullane then filed a second timely appeal of the court's denial of his Rule 60 motion and earlier non-dispositive orders related to his requests for discovery and leave to file an amended complaint. We now resolve these cases as a consolidated appeal.

## II. Discussion

We review a district court's grant of a motion for summary judgment de novo.[3] Carrozza v. CVS Pharmacy, Inc., 992

---

[3] Mullane's briefing focuses almost exclusively on issues of law surrounding the district court's summary judgment orders, while referencing the court's abuse of discretion in denying his requests for pre-dismissal discovery. But he does not raise any

F.3d 44, 56 (1st Cir. 2021).  We must construe the evidence "in the light most congenial to the nonmovant," and will affirm the grant of summary judgment where the record "presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law."  McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017).

We review a district court's order limiting discovery for abuse of discretion.  U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P., 719 F.3d 31, 37 (1st Cir. 2013).  And "[w]e will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party."  Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989).

On appeal, Mullane raises two main challenges.  First, he argues that there is a genuine dispute of material fact as to

particular challenges with respect to his Rule 60 motion or any other motions.  We thus cabin our review to the legal bases for summary judgment and the district court's denial of Mullane's discovery requests.  We also assume that Mullane has waived all specific arguments related to the district court's denial of his other motions.  See Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 21 n.13 (1st Cir. 2017) ("Because plaintiffs do not offer any argument relating to the denial of their motion for reconsideration in their briefs, we need not discuss this aspect of the case any further."); United States v. Mayendía-Blanco, 905 F.3d 26, 32 (1st Cir. 2018) ("[I]t is a well-settled principle that arguments not raised by a party in its opening brief are waived.").

whether the DOJ violated FOIA by failing to conduct an adequate search for documents. In particular, he contends that the affidavits of the DOJ's FOIA specialists were not sufficiently detailed and that the DOJ's document search was unreasonably restrictive. Second, he maintains that the district court erred in holding that the Privacy Act imposes a jurisdictional exhaustion requirement and dismissing his Privacy Act claim for failure to exhaust. We take these arguments in turn.

## A. Adequacy of the DOJ's FOIA Search

"[T]he adequacy of an agency's search for documents under FOIA is judged by a standard of reasonableness." Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224, 230 (1st Cir. 1994). Moreover, "[t]he crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1993) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

The government has "the initial burden of showing that it conducted an adequate search," and can do so by "provid[ing] an affidavit describing the search it conducted in response to the plaintiff's request." Moffat v. U.S. Dep't of Just., 716 F.3d 244, 254 (1st Cir. 2013). And the court must generally afford a "presumption of good faith . . . to agency affidavits." Church of Scientology Int'l, 30 F.3d at 233.

If the agency presents sufficient support for showing "that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." Maynard, 986 F.2d at 560. The requester cannot invalidate the good-faith presumption by relying on "purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)); see also Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1486 (D.C. Cir. 1984) ("Despite [the plaintiff's] repeated attacks on the integrity of the [DOJ's] affidavits, they cannot seriously be challenged as having been made in bad faith.").

## 1. Sufficiency of the DOJ's Affidavits

"A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." Maynard, 986 F.2d at 559. And "[t]he affidavit should additionally 'describe at least generally the structure of the agency's file system which makes further search difficult.'" Id. (quoting Church of Scientology of Cal. v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986)).

To justify the adequacy of its FOIA searches and responses, the DOJ submitted affidavits from Francys Marcenaros, a USAO-SDFL FOIA Paralegal Specialist, and Justin Wilkinson, an

attorney-advisor for the Executive Office for United States Attorneys assigned to review FOIA requests directed at United States Attorneys' Offices. But Mullane insists that the affidavits did not explain the structure of the USAO-SDFL's file system or detail how USAO-SDFL performed the searches "with sufficient precision."

At the outset, the DOJ maintains that Mullane has "waived" any arguments regarding the affidavits' lack of specificity on the USAO-SDFL's file systems.[4] In response, Mullane dedicates most of his reply brief to arguing that this circuit's preservation caselaw conflicts with binding Supreme Court precedent and briefly invokes the second exception to the law-of-the-circuit doctrine to urge reconsideration of our decisions on waiver and forfeiture.

"To preserve a point for appeal, some developed argumentation must be put forward in the nisi prius court -- and a veiled reference to a legal theory is not enough to satisfy this

---

[4] There is an important distinction between "waiver" and "forfeiture" under our caselaw that the government seems to elide. "[A] party who fails to lodge an objection or raise an argument below is deemed to have forfeited the argument." United States v. Delgado-Sánchez, 849 F.3d 1, 6 (1st Cir. 2017). And forfeited arguments may be reviewed on appeal for plain error. Id. But waived arguments cannot be reviewed on appeal "because 'waiver implies an intention to forgo a known right, whereas forfeiture implies something less deliberate -- say, oversight, inadvertence, or neglect in asserting a potential right.'" Id. (quoting United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009)).

requirement." B&T Masonry Const. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004). In this vein, we have made clear "that 'a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court.'" Id. at 41 (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992)).

Nonetheless, Mullane seems to concede that, despite having had every opportunity and reason to do so, he did not raise the file structure issue before the district court. And Mullane's authorities give us no reason to wholly reexamine our approach to forfeiture and plain-error review here. The Supreme Court expressly stated in Singleton v. Wulff, 428 U.S. 106 (1976), that "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals." Id. at 121. Indeed, the Singleton Court declined to announce a "general rule" of waiver or forfeiture for the lower appellate courts. Id. And none of the Supreme Court cases that Mullane cites in his reply brief establish a "general rule" that staking out a broad position (e.g., the affidavit was insufficient) preserves all factual and legal arguments supporting that position (e.g., the affidavit inadequately described the office's file structure). Instead, those cases all concern "prudential limitations" on when the Supreme Court -- not the lower appellate courts -- would find an argument preserved on appeal.

- 10 -

See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP, 759 F.3d 522, 529 (6th Cir. 2014).  Those cases do not mention (let alone overrule) the Court's holding in Singleton.[5]  And that is likely why we have continued to cite favorably to Singleton's broad grant of authority to the circuit courts to establish rules governing waiver and forfeiture.  See, e.g., Kleiner v. Cengage Learning Holdings II, Inc., 66 F.4th 28, 33 (1st Cir. 2023).

Moreover, no exception to the law-of-the-circuit doctrine applies here.  There is no reason to believe that "fresh developments" in our sister circuits undermine the rationale of our normal approach to issue preservation.  Williams v. Ashland Eng'g Co., Inc., 45 F.3d 588, 592 (1st Cir. 1995).  As an initial note, we are not persuaded that the law in our circuit significantly diverges from the law of other circuits.  But even if it did, many of the out-of-circuit cases that Mullane cites were published years ago.  And this court has not since changed its approach.  See, e.g., Punsky v. City of Portland, 54 F.4th 62, 67 (1st Cir. 2022).  In other words, First Circuit panels have had the benefit of "fresh developments" in appellate approaches to waiver and forfeiture for some time.  But those panels have not

_____

[5]  Mullane also cites to Holguin-Hernandez v. United States, 589 U.S. 169 (2020).  But that case addressed how a defendant may preserve a challenge to the substantive reasonableness of his sentence under Federal Rule of Criminal Procedure 51(b), id. at 173-75, and did not purport to address a circuit court's rules on argument preservation in a civil case.

- 11 -

called for a change in course, and we see no basis on which to do so here. Nor do we believe that applying our traditional approach to waiver and forfeiture would result in a "gross miscarriage of justice," Slade, 980 F.2d at 31, especially given that this case does not implicate exceptional or important constitutional issues, TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 930 (1st Cir. 1995).

Mullane's failure to preserve his argument that the affidavits were insufficient because they did not adequately explain the structure of the file system leaves open the possibility that the argument might be forfeited rather than waived altogether. Assuming favorably to Mullane that forfeiture applies, we find that he nevertheless fails to satisfy the demanding requirements of plain-error review applicable to forfeited arguments. Indeed, he makes no express effort to satisfy those requirements.[6] See United States v. Benjamin-Hernandez, 49 F.4th 580, 584-85 (1st Cir. 2022).

---

[6] For the sake of completeness, we note that Mullane's file structure arguments would fail on the "extremely demanding" standard of plain-error review because any error here was not "clear or obvious." Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 30 (1st Cir. 2015) (first quoting Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007); and then quoting Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002) (en banc) (per curiam)). Mullane contends that the DOJ's affidavits needed to explicitly articulate "how the office stored" everything including emails, text messages, calendar entries, paper documents, handwritten notes, and voicemails, while also detailing the USAO-SDFL's "policies about using personal electronic devices or personal email accounts for work-related purposes." In Mullane's view, the DOJ's affidavits

But Mullane has consistently argued that the DOJ failed to adequately detail how it performed the search for documents responsive to his FOIA request. For a FOIA affidavit to sufficiently describe the scope and manner of a search, it must "set forth the search terms and the type of search performed, and aver that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 820 F.2d 57, 68 (D.C. Cir. 1990). The Marcenaros affidavit did that. As the district court summarized, Marcenaros detailed the search process to include:

> (1) sending an officewide email to all USAO-SDFL personnel asking if they had records regarding Jonathan Mullane, including any/all records in the possession of the USAO-Miami, but not limited to his employment or personnel records, between the months of January 2018 and April 2018; (2) emailing the attorneys who run the internship program, the human resources department and the leadership of the Asset Forfeiture Division (where Mullane was assigned as an intern) requesting any responsive

suggest that the USAO-SDFL's "document management practices are no better than a busy sheriff's office in the Wild West."

Conspicuously absent among this laundry list of alleged shortcomings and hyperbole, however, are any citations to legal authority. And while the court in Maynard v. CIA, 986 F.2d 547 (1st Cir. 1993), made clear that an affidavit "should [] 'describe[,] at least generally,'" the agency's file system structure, id. at 559 (emphasis added) (quoting Church of Scientology of Cal. v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986)), we have not identified any caselaw suggesting that a FOIA search is per se unreasonable where an agency does not chronicle every file system it uses. Although the DOJ's affidavits could have included more substantive descriptions of the agency's file systems, the DOJ sufficiently explained the agency's search and relied on other details to justify the methods deployed.

- 13 -

> records; and (3) requesting responsive emails
> between the former U.S. Attorney Benjamin Greenberg
> and Judge Federico Moreno pertaining to Mullane.

Mullane v. U.S. Dep't of Just., No. 19-12379, 2021 WL 1080249, at *4 (D. Mass. Mar. 19, 2021) (cleaned up). Marcenaros also attested that all responsive record systems were searched.

Furthermore, while we address Mullane's challenges to the reasonableness of the DOJ's limited search terms and the scope of its search below, Mullane cannot meaningfully argue that the DOJ's affidavits did not describe its search process. For example, after identifying potential custodians, Marcenaros explained that her search targeted "any records including the term 'Mullane.'" Setting aside again Mullane's objections to the scope of the search, Marcenaros also specified that any pertinent records "would have been in the form of emails," but the DOJ "searched for and found" other records, including "correspondence, court pleadings, transcript of hearing[,] and personnel records."

Additionally, for the first time in his reply, Mullane contends that Marcenaros's statement that relevant records "would have been in the form of emails" is impermissibly based on "hearsay." As noted above, Marcenaros attested that she "was advised by the individuals that, if they had any records, the records would have been in the form of emails." Assuming arguendo that Mullane did not waive the argument by debuting it in his reply, see United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016),

- 14 -

he overlooks the established practice of permitting "declarations in FOIA cases" to include "information . . . relayed to" the declarant by internal agency employees "without running afoul of Rule 56." DiBacco v. Dep't of the Army, 926 F.3d 827, 833 (D.C. Cir. 2019). Because "an agency need not submit an affidavit from the employee who actually conducted the search," and "may rely on an affidavit of an agency employee responsible for supervising the search," Mullane's objections on this point are meritless. Maynard, 986 F.2d at 560; see also Carney v. U.S. Dep't of Just., 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search.").

In short, the DOJ's affidavits "cogently explained" the nature of its search, "provid[ing] a reasonable explanation for the agency's process and, at a bare minimum, created a presumption that the [agency] acted in good faith." Stalcup v. CIA, 768 F.3d 65, 74 (1st Cir. 2014).

## 2. Reasonableness of the Scope of the Search

Aside from arguing that the DOJ's affidavits insufficiently explained its search process, Mullane further insists that the DOJ's FOIA search was unreasonably restrictive. In this regard, Mullane primarily maintains that the DOJ wrongly

limited its search to emails from within a four-month period and ignored his proposed search terms.

First, Mullane insists that, per Marcenaros's affidavit, the DOJ's document search was unduly restricted to records "between the months of January 2018 and April 2018" -- the short period that Mullane was employed at the USAO-SDFL. Marcenaros summarized that she wrote to all USAO-SDFL employees asking that they contact her "if they had records 'regarding Jonathan Mullane, including any/all records in the possession of [] USAO-Miami, but not limited to his employment or personnel records, between the months of January 2018 and April 2018." While the affidavit's phrasing is admittedly a bit awkward,[7] Mullane does not dispute the DOJ's contention that it ultimately disclosed documents outside of this timeframe to Mullane. The record thus undermines Mullane's position that the DOJ's FOIA search was actually limited to his employment period.[8] And contrary to Mullane's interpretation, we

_____

[7] Mullane initially used the same sentence construction in framing his October 14, 2018 FOIA request: "I further request any and all information in connection with my employment at the [USAO-SDFL], between the months of January 2018 and April 2018." (Emphasis added.) Therefore, Marcenaros may have merely followed Mullane's lead in conveying her request to USAO-SDFL employees in an identical manner.

[8] Even if the DOJ had only produced documents from within Mullane's brief employment period, we point out that the reasonableness standard "would be undermined" if "a requester [were] allowed to dictate, through search instructions, the scope of an agency's search." See Mobley v. CIA, 806 F.3d 568, 581 (D.C. Cir. 2015).

do not read the DOJ's "instructions" to have "improperly truncated" the time period for its search rather than merely referencing the dates of Mullane's employment.

Relatedly, "[t]here is no requirement that an agency search every record system." Oglesby, 920 F.2d at 68. Even so, as Mullane emphasizes, Marcenaros's affidavit suggests that the DOJ's search was limited to emails. Marcenaros attested that she was informed by potential custodians that any responsive documents would be in email form. But Marcenaros made clear that she requested "any/all records" and the "responsive records" she received included more than just emails. Therefore, the DOJ did not unreasonably restrict its search to emails. Aside from questioning what else the DOJ could have missed, Mullane presents no reason to conclude that the DOJ intentionally overlooked "certain places" where it had "reason to know" responsive documents would be housed. Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 327 (D.C. Cir. 1999).

Second, the DOJ's use of "Mullane" as its only search term did not render its search unreasonable. Mullane repeatedly argues that the DOJ "rewr[o]te his request" and inappropriately considered "the purpose animating" his requests. Beginning with the search terms in his October 12, 2018 FOIA request, Mullane demanded six specific search terms: "Mullane," "Jonathan," "intern," "law clerk," "law student," and "Moreno." In general,

an agency "need not knock down every search design advanced by every requester." DiBacco v. U.S. Army, 795 F.3d 178, 191 (D.C. Cir. 2015). But even though "[a]gencies are not invariably required to search their records using the terms proposed by the FOIA requestor," their searches must still be "reasonably calculated to uncover all relevant documents." Am. Oversight v. U.S. Dep't of Health & Hum. Servs., 101 F.4th 909, 923 (D.C. Cir. 2024) (quoting Valencia-Lucena, 180 F.3d at 325).

Here, "Mullane" represented the most specific, yet broad search term that was reasonably likely to identify pertinent records without yielding an excessive number of superfluous hits. As Marcenaros explained, the terms "intern," "law clerk," and "Moreno" would not have helped "obtain responsive records" because the USAO-SDFL "has dozens of 'law clerks' and 'interns'" and it "receives employment applications from, and otherwise regularly deals with, current and former judicial 'law clerks.'" And although Marcenaros did not specifically address it, the same rationale would plainly support omitting the term "law student." In addition, "Judge 'Moreno' was the chief judge of [the USAO-SDFL's] District during the time-period covered by [Mullane's] request," and using Judge Moreno's name would have resulted in many irrelevant documents pertaining to the "active docket of cases involving the U.S. as a party" before Judge Moreno. Similarly, the term "Jonathan" would presumably yield unrelated

records involving other employees, attorneys, applicants, parties, and witnesses with this exceptionally common name.

Mullane further criticizes Marcenaros's failure to quantify how burdensome a search using his preferred terms would have been for the DOJ. But we agree with the district court that Marcenaros's affidavit reflects a valid explanation for the DOJ's search, particularly "given the nature of Mullane's limited contact with the office as an unpaid student intern." Mullane, 2021 WL 1080249, at *4. And we see no reason why this shortcoming makes the DOJ's search per se unreasonable, nor has Mullane provided any substantive support for this purported requirement. Instead, Marcenaros's explanation for limiting the search terms was based on "a practical and common-sense approach" to finding relevant documents. Rein v. U.S. Pat. & Trademark Off., 553 F.3d 353, 363 (4th Cir. 2009).

Lastly, Mullane insists that the DOJ should not have considered the purpose behind his FOIA requests. Yet, in his own words, he sought "records pertaining to Jonathan Mullane" in his FOIA request. We therefore cannot fault the DOJ for understanding his request to be "for documents concerning himself."

In sum, the DOJ conducted an adequate search for documents and discharged its obligations under FOIA. And for that reason, the district court also did not abuse its discretion in

- 19 -

denying Mullane's request for discovery related to the DOJ's affidavits and FOIA searches.

## B. Exhaustion Under the Privacy Act

The Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." Doe v. Chao, 540 U.S. 614, 618 (2004). As relevant here, the Privacy Act permits "any individual" to obtain a copy of "his record or [of] any information pertaining to him which is contained in the system." 5 U.S.C. § 522a(d)(1). The statute also mandates that all agencies "establish procedures . . . for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section." Id. § 522a(f)(4).

Here, in line with several district court cases, the district court held that the Privacy Act imposes a jurisdictional exhaustion requirement. See, e.g., Barouch v. U.S. Dep't of Just., 962 F. Supp. 2d 30, 67 (D.D.C. 2013). And because it determined that Mullane had not administratively exhausted his Privacy Act claim, the district court dismissed the claim for lack of jurisdiction.

We take no view on whether the Privacy Act's administrative exhaustion requirement is jurisdictional. Instead,

we find that Mullane has waived any argument to the contrary. The government argues that, despite having had an opportunity to do so in his motion to reconsider, Mullane never challenged the district court's conclusion that subject-matter jurisdiction was lacking for failure to exhaust administrative remedies.

Mullane does not dispute this contention. Rather, he broadly asserts that a party cannot waive or forfeit an argument concerning subject-matter jurisdiction. This is wrong. In a case involving whether Congress intended to create a jurisdictional rule in prescribing a filing deadline for review by an Article I tribunal, the Court stated that "[o]bjections to subject-matter jurisdiction . . . may be raised at any time." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011). And permitting a party to challenge the existence of Article III subject-matter jurisdiction even at late phases of litigation serves the crucial purpose of ensuring that the federal court does not exceed the bounds of its Article III powers. See id. at 434-35; Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction, then, is an [Article] III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."). On the other hand, an argument in favor of a court's subject-matter jurisdiction -- like the one Mullane advances here -- can be waived or forfeited. Merrell Dow Pharms.,

- 21 -

Inc. v. Thompson, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

Mullane never confronts the thrust of the government's waiver argument, and we agree with the government that he ignored a viable opportunity to challenge the district court's jurisdictional analysis below. He has therefore forfeited his right to challenge that analysis on appeal. See United States v. Delgado-Sánchez, 849 F.3d 1, 6 (1st Cir. 2017). While a forfeited argument is ordinarily subject to plain-error review, id., Mullane also does not attempt to satisfy that standard of review. Consequently, Mullane has waived any challenge to the district court's conclusion that the Privacy Act's exhaustion requirements are jurisdictional. See United States v. Colón-De Jesús, 85 F.4th 15, 25 (1st Cir. 2023). Accordingly, we affirm the district court's grant of summary judgment to the DOJ on Mullane's Privacy Act claims.

## III. Conclusion

For the foregoing reasons, the district court's order on summary judgment is **affirmed**.