# United States Court of Appeals
## For the First Circuit

No. 21-1493

UNITED STATES OF AMERICA,

Appellee,

v.

KOURTNEY WILLIAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before
Gelpí, Howard, and Thompson,
Circuit Judges.

Jessica LaClair, with whom Law Office of Jessica LaClair was on brief, for appellant.

Noah Falk, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

August 22, 2023

**HOWARD**, **Circuit Judge**. Defendant-appellant Kourtney Williams appeals the sentence he received in connection with a 2014 robbery in Maine. Specifically, he contends that his base offense level should have been lower, because: (1) the district court mistakenly found that two of his earlier convictions for assault with a dangerous weapon under Massachusetts law and robbery with the use of a dangerous weapon under Maine law were "crime[s] of violence" under U.S. Sentencing Guidelines ("USSG") §2K2.1; and (2) the record does not in fact show that he was convicted of robbery with the use of a dangerous weapon under Maine law. Because our cases foreclose his first contention, and we disagree with his second, we affirm.

## I. Background

This is Williams's second appeal. See United States v. Lara, 970 F.3d 68 (1st Cir. 2020). In the present appeal, he challenges only his sentence; therefore, we summarize the facts relevant to that issue.

In April 2015, Williams was indicted for conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); and possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) and 924(e). In September 2016, a jury found him not guilty of

conspiracy to possess with intent to distribute controlled substances, but guilty of the other charges.

At his first sentencing, the district court concluded that Williams qualified as a "career offender" under USSG §4B1.1 because, as relevant here, he "ha[d] at least two prior felony convictions" for "crime[s] of violence" as defined by §4B1.2 -- specifically, assault with a dangerous weapon, Mass. Gen. Laws ch. 265, § 15B(b) ("Massachusetts ADW") and robbery with the use of a dangerous weapon, Me. Rev. Stat. Ann. tit. 17-A, §§ 651(1)(B) and 1252(4) ("Maine RDW")[1] -- and calculated his guidelines sentencing range accordingly. Williams, 2017 WL 3485562 at *2-5; §4B1.2, cmt. n.1 (cross-referencing the definition in §4B1.1).

The district court sentenced him to a total incarcerative sentence of 184 months and mandatory supervised release, and Williams appealed, challenging his convictions and sentence. We affirmed his convictions, except for the one for use of a firearm during and in relation to a crime of violence under

---

[1] Section 651(1)(B) was amended on June 8, 2017. Williams pleaded guilty to the pre-June 2017 version of § 651(1)(B), which is the version of the statute quoted herein. See United States v. Williams, No. 15-00069, 2017 WL 3485562, at *3 n.1 (D. Me. Aug. 14, 2017).

Section 1252(4) was also amended on July 31, 2018, and was later repealed altogether. Williams pleaded guilty to the pre-July 2018 version of § 1252(4) (if in fact he pleaded guilty to it, which Williams contests), and that version of the statute is quoted herein. See id. at *4.

- 3 -

§ 924(c)(1)(A), and vacated and remanded the case for resentencing in light of that determination. Lara, 970 F.3d at 73.

At his resentencing, the district court concluded that his base offense level was 26 under USSG §2K2.1(a)(1), which applied because of his conviction for possession of a firearm by a felon in violation of § 922(g)(1). That section provides in relevant part for a base offense level of 26 where a defendant has previously "sustain[ed] at least two felony convictions of . . . a crime of violence." "Crime of violence" is in turn defined by §4B1.2, which is part of the career offender Guidelines. See United States v. Castro-Vasquez, 802 F.3d 28, 34 n.3 (1st Cir. 2015); USSG §2K2.1 cmt. n.1. The district court concluded, consistent with its earlier ruling, that Williams had two previous felony convictions for crimes of violence -- one for Massachusetts ADW and one for Maine RDW -- and calculated his Guidelines sentencing range on that basis. The court imposed a total prison sentence of 140 months followed by three years of supervised release.

## II. Discussion

The only question in this appeal is whether the district court correctly concluded that Williams had two prior felony convictions for "crime[s] of violence." Williams contends that Massachusetts ADW and Maine RDW are not crimes of violence, and also that he was not in fact convicted of Maine RDW, but rather of

- 4 -

robbery in violation of § 651(1)(B), which the parties agree does not qualify as a crime of violence.

Whether a prior conviction qualifies as a "crime of violence" is a question of law that, if preserved, we review de novo. See United States v. Almenas, 553 F.3d 27, 31 (1st Cir. 2009).[2]

Section 4B1.2(a) defines an offense as a "crime of violence" if the offense is "punishable by imprisonment for a term exceeding one year" and: "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, [or] robbery . . . ." The first clause is often referred to as the "elements" or "force" clause; the second is often referred to as the "enumerated" clause. And the Supreme Court held in Johnson v. United States that

---

[2] The government does not dispute that Williams has preserved the contentions he raises on appeal, with one exception:  his contention that, because of the Supreme Court's decision in Borden v. United States, Massachusetts ADW and Maine RDW are not crimes of violence.  141 S. Ct. 1817 (2021) (plurality opinion).  The Supreme Court issued its decision in Borden on June 10, 2021, which was roughly a week before Williams's re-sentencing (though after his sentencing memorandum for that proceeding had been submitted). He did not mention or raise any contentions based on Borden at his sentencing hearing.  The government thus contends that such contentions should be reviewed for plain error only.  For the reasons explained below, however, we need not decide whether our review is for plain error, because even under a de novo standard, our previous panel decisions bind us notwithstanding Borden.

"'physical force' means <u>violent</u> force -- that is, force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010) (emphasis in original).

The government contends that Massachusetts ADW is a crime of violence under the elements clause, but that Maine RDW qualifies as a crime of violence under either clause of §4B1.2. However, the parties treat the analysis applicable to Maine RDW as the same under either clause, and we focus here on the elements clause.

We apply the "categorical approach" to determine "whether a defendant's prior conviction for a certain crime satisfies the [elements] clause." <u>See</u> <u>United States</u> v. <u>Starks</u>, 861 F.3d 306, 315 (1st Cir. 2017) (examining an identical clause under the Armed Career Criminal Act ("ACCA")).[3] Under that

_____

[3] The ACCA and 18 U.S.C. § 16 both contain their own elements clauses that use similar or identical language to the elements clause of the career offender guidelines. ACCA imposes longer sentences when a defendant has "three previous convictions . . . for a violent felony," among other things. 18 U.S.C. § 924(e)(1). As relevant here, ACCA defines a "violent felony" using language that is identical to the elements clause of §4B1.2.

18 U.S.C. § 16 in turn defines a "crime of violence" for purposes of many different statutes. <u>See, e.g.,</u> 8 U.S.C. § 1227(a)(2)(E)(i) (permitting the deportation of noncitizens who commit crimes of domestic violence after admission). Its elements clause uses language that is nearly identical to §4B1.2's elements clause. The only difference is that § 16(a) includes offenses that have "as an element the use, attempted use, or threatened use of physical force against the person <u>or property</u> of another," § 16(a) (emphasis added); §4B1.2's elements clause omits the "of property" language. <u>Cf.</u> <u>Borden</u>, 141 S. Ct. at 1824 (same, as

approach, the question turns not on whether the defendant in fact "used, attempted to use, or threatened to use violent force in committing the crime as a matter of historical fact, but on whether the use, attempted use, or threatened use of violent force is required to satisfy one of the crime's elements." Id. Thus, a court should consider "whether the least serious conduct for which there is a 'realistic probability' of a charge and conviction necessarily involves the use of violent force." Id. (quoting Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)).

A. Massachusetts ADW

We have previously held that Massachusetts ADW is a "crime of violence" under the elements clause of §4B1.2 and ACCA. United States v. Fields, 823 F.3d 20, 35 (1st Cir. 2016) (§4B1.2); United States v. Hudson, 823 F.3d 11, 18 (1st Cir. 2016) (ACCA). Williams's main contention as to Massachusetts ADW is that the Supreme Court's decisions in United States v. Taylor, 142 S. Ct. 2015 (2022), and Borden undermine those previous decisions, and that we should therefore reconsider them. The government contends

_____

between ACCA and § 16(a)).

The parties agree that we may rely on precedents interpreting the elements clauses of § 16(a) and ACCA to interpret that clause of §4B1.2. United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009) (same, as to ACCA and §4B1.2); see Borden, 141 S. Ct. at 1827 (concluding that the reasoning of another case examining § 16(a)'s elements clause essentially answered a related question the Court confronted as to the elements clause of ACCA).

- 7 -

that we remain bound by Hudson and Fields.

Under the law of the circuit doctrine, "newly constituted panels . . . are constrained by prior panel decisions directly (or even closely) on point," Hudson, 823 F.3d at 14-15 (quotations omitted), absent "the occurrence of a controlling intervening event (e.g., a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course," United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001).

Thus, to determine whether Borden or Taylor represents a "controlling intervening event," it is necessary to review the existing case law in this circuit concerning the elements clause of §4B1.2, as well as closely analogous provisions in § 16 and ACCA.

The first such relevant case is United States v. Fish, in which we concluded that § 16(b) -- which defines a crime of violence as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," § 16(b) (emphasis added) -- "does not reach recklessness offenses." 758 F.3d 1, 9-10 (1st Cir. 2014). We thus concluded that a conviction for assault and battery with a dangerous weapon ("ABDW") under Massachusetts law did not qualify

- 8 -

as a "crime of violence" under § 16(b), because it can be committed with "the intentional commission of a reckless act." Id. at 16. We based our conclusion on the Supreme Court's decision in Leocal v. Ashcroft, which held that the phrase "use . . . of physical force against another" in the elements clause of § 16 -- that is, § 16(a) -- excluded negligence-or-less crimes because the phrase "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. 1, 9-10 (2004). The Court found the same as to § 16(b), due to the same language in that clause. Id. at 11. In Fish, we noted that several other circuits had extended Leocal's rationale to reckless crimes under §§ 16(a) and (b), which Leocal had not had the occasion to address, and made the same extension as to § 16(b). 758 F.3d at 10-11, 11 n.4.[4]

Next, in United States v. Whindleton, 797 F.3d 105 (1st Cir. 2015), we held that Massachusetts ADW is a "crime of violence" under ACCA's elements clause. Id. at 107. We had previously concluded that simple assault under Massachusetts law is not a "crime of violence" under that clause because it can be accomplished by an attempted or threatened offensive touching and thus does not require "violent force" as defined by Johnson -- that is, "force capable of causing physical pain or injury to

---

[4] Leocal "d[id] not deal . . . with an attempted or threatened use of force" -- only "use of force." Leocal, 543 U.S. at 8-9 (emphasis in original).

- 9 -

another person." Id. at 113-14. Nevertheless, we concluded that Massachusetts ADW required such force. Id. at 116. We started by noting the elements of Massachusetts ADW:

> Massachusetts common law recognizes two theories of assault: attempted battery and threatened battery. Battery, in turn, has been defined as harmful or offensive touching. As such, the crime of simple assault has been held to encompass attempted or threatened touching if offensive. The crime of ADW adds [only] one additional element, namely, that the assault was perpetrated by means of a dangerous weapon.

Id. at 112 (cleaned up). We further explained that under Massachusetts law, a dangerous weapon "consists of instrumentalities designed and constructed to produce death or great bodily harm" or that "as used by the defendant, are capable of producing serious bodily harm." Id. at 114 (cleaned up). Thus, we concluded, "the element of a dangerous weapon imports the 'violent force' required by Johnson" because "the harm threatened by an assault is far more violent than offensive touching when committed with a weapon that is designed to produce or used in a way that is capable of producing serious bodily harm or death." Id.

Finally, the following year, in Hudson, we reaffirmed that Massachusetts ADW is a "crime of violence" under the elements clause of ACCA, rejecting a contention that it lacks the requisite mens rea to qualify. 823 F.3d at 16-18. We noted that Fish had

- 10 -

found that "section 16(b) does not reach recklessness offenses," and that, although Fish and Leocal dealt only with § 16, "[t]he Supreme Court has noted that section 16 is 'very similar' to [ACCA's elements clause]"; on that basis, we "assume[d] without deciding that a similar bridge c[ould] be built between the mens rea requirements of the two sections." Hudson, 823 F.3d at 16, 16 n.7 (citations omitted). But we concluded that, under Massachusetts law, "an ADW conviction requires that the use or threat of physical [violent] force be intentional" and thus that "a Massachusetts ADW conviction meets both the physical force and mens rea requirements necessary to qualify as a predicate offense under . . . ACCA's [elements] clause." Id. at 17-18. We also clarified that Massachusetts ADW requires proof of "specific intent," notwithstanding the defendant's arguments to the contrary. Id. at 17, 17 n.8.

Williams contends that Taylor and Borden undermine Hudson (and Fields, because it relied on Hudson's reasoning). We address each contention in turn.

i. Taylor

As to Taylor, Williams contends that the Supreme Court's construction of the meaning of "threatened use of force" in Taylor undermined our conclusion that Massachusetts ADW is a crime of violence. 142 S. Ct. at 2022-23. Taylor held that attempted Hobbs Act robbery does not qualify as a "crime of violence" under 18

- 11 -

U.S.C. § 924(c), which defines a substantive crime using in part identical language to the elements clause of §4B1.2.  Id. at 2020, 2025-26.  In reaching that conclusion, the Court determined that "threatened use" of force in the elements clause of § 924(c) means "[a] communicated intent to inflict physical or other harm on [a] person" as opposed to simply "an abstract risk to community peace and order."  142 S. Ct. at 2022-23 (first alteration in original).

But that determination is not at odds with our reasoning in Hudson.  The definition of "threatened use of physical force" was not at issue in Hudson.  Moreover, as we explained in that decision, under the threatened-battery variant of Massachusetts ADW, "the Commonwealth must show that 'the defendant intended to place the victim in fear of an imminent battery' with a dangerous weapon."  823 F.3d at 17 (quoting Commonwealth v. Porro, 939 N.E.2d 1157, 1163 (Mass. 2010)).  It must also show that the victim perceived that threat.  Whindleton, 797 F.3d at 112 n.8. Accordingly, Taylor's requirement that "threatened use" of force be a "communicated" threat does not undermine Hudson.

Williams resists that conclusion by pointing to our decision in United States v. Delgado-Sánchez, which he contends adopted a definition of threatened use of force as an "abstract risk to community peace and order."  In Delgado-Sánchez, we concluded that the district court's finding that intentionally pointing a firearm at another was a crime of violence under the

- 12 -

elements clause of §4B1.2 was not plain error. 849 F.3d 1, 8, 10-11 (1st Cir. 2017). We noted that if "threatened use of physical force" meant "communicat[ing] intent to inflict harm," then pointing a firearm at a person without that person's knowledge, which was "arguably" a method of committing the offense at issue, would <u>not</u> qualify as a crime of violence. <u>Id.</u> at 10 (alteration original). We further noted, however, that one might also read "threat" as a "thing that might well cause harm" and that the defendant had pointed to no precedent precluding such a definition. <u>Id.</u> Thus, we concluded, the district court's error, if it made one, was by no means clear or obvious and we did not need to determine which definition controlled. <u>Id.</u> at 11.

<u>Taylor</u> forecloses the latter definition of "threatened use of physical force" discussed in <u>Delgado-Sánchez</u>. But (1) our comments were made on review for plain error, and thus had limited precedential effect; and (2) the threatened-battery variant of Massachusetts ADW requires that the defendant intend to place the victim in fear of a battery and that the victim perceive that threat; it thus clearly meets the "communicated threat" requirement. <u>See</u> <u>Whindleton</u>, 797 F.3d at 112 n.8. Put differently, <u>Hudson</u> did not rely on a definition of "threat" as a "thing that might well cause harm" to find that Massachusetts ADW is a crime of violence.

    ii. <u>Borden</u>

- 13 -

Nor does Borden undermine our holding in Hudson. Williams contends that (1) after Borden, to qualify as a "crime of violence" under the elements clause, an offense must require that offenders intend to use or intend to threaten to use, physical (violent) force against another -- that is, the offender must specifically intend the degree of violent force required by §4B1.2; and (2) Massachusetts ADW does not always meet that requirement.

But whatever the merits of those two contentions, they do not follow from Borden. In Borden, the Supreme Court "reach[ed] the question . . . reserved" in Leocal, and confirmed that a criminal offense is not a violent felony under ACCA's elements clause if it requires "only a mens rea of recklessness." 141 S. Ct. at 1821-22, 1825. Four justices reached that result because they determined that "the 'use' phrase, as modified by the 'against' phrase . . . excludes reckless conduct." Id. at 1829 n.6. Justice Thomas concurred in the judgment, but wrote separately to explain that, in his view, the "'use' phrase alone accomplish[ed] that result." Id.; see id. at 1835 (Thomas, J., concurring). Thus, there were "five" votes "to answer the question presented" -- that is, whether the "elements clause exclude[s] reckless conduct." Id. at 1829 n.6 (explaining the "line-up" of Borden).

But, by the time that Hudson was decided, Fish had already answered in the affirmative the question "reserved" in

- 14 -

Leocal that Borden answered. See Id. at 1825; Fish, 758 F.3d at 9-10. And Hudson rejected that Massachusetts ADW failed to meet Leocal's and Fish's intent requirements because it concluded that "an ADW conviction requires that the use or threat of physical [violent] force be intentional." Hudson, 823 F.3d at 16-17. Thus, Borden in no way undermined Hudson's conclusion -- it merely confirmed that a premise underlying it is correct (that, if we had found that Massachusetts ADW included reckless crimes, we could not have found that it qualifies as a crime of violence).

Williams next contends that Hudson's conclusion that "a [Massachusetts] ADW conviction requires that the use or threat of physical force be intentional," id. at 17, does not always hold because Massachusetts ADW requires only that a defendant intend or intend to threaten a mere touching, and the dangerousness of the weapon is an objective measurement not made from the perspective of the defendant, see Commonwealth v. Powell, 742 N.E.2d 1061, 1064 (Mass. 2001) (explaining that dangerous weapons include "items that are used or displayed in a way such that they reasonably appear capable of causing serious injury or death" even if "on closer inspection" they are "incapable" of doing so). Therefore, his theory goes, a defendant could be convicted of Massachusetts ADW where the use or threat of violent force is unintentional because he only intends to use or threaten use of non-violent force (here, an offensive touching) with an object

- 15 -

that appears non-dangerous from his perspective, but that nevertheless appears objectively dangerous in the eyes of the victim. Taking an attempted use of force as an example, Williams offers the example of a defendant who, on Halloween, chases after a stranger with a Styrofoam knife intending to poke him with it, thinking that the stranger will see that it is merely Styrofoam,[5] but not realizing that due to lighting (or some other circumstance) it objectively appears like a real knife to the stranger.

That example rests on the premise that this circuit and others have been mistaken in concluding that "the intent and force requirements outlined in Leocal and [Johnson] are examined separately." Lassend v. United States, 898 F.3d 115, 131 (1st Cir. 2018) (alteration in original) (quoting Stuckey v. United States, 878 F.3d 62, 70 (2d Cir. 2017)). For example, in Lassend, we joined the Second Circuit in determining that a conviction for first-degree robbery under subsection (4) of New York Penal Law § 160.15 qualified as a "violent felony" under ACCA's elements clause. Id. at 118. To prove that crime, the state is required

---

[5] We have added this clause to Williams's hypothetical for clarity, because if the defendant had wanted the stranger to believe it was a real knife and feel threatened by it, he plainly would have intended to threaten to use physical force under settled law. See, e.g., Taylor, 142 S. Ct. at 2021-22 (noting as an example of a threatened use of violent force someone who gives a note -- "[y]our money or your life" -- to a cashier as a bluff to get them to submit to his demands).

to show that the defendant intended a "forcible taking," and, in addition, that he or an accomplice, "[d]isplay[ed] what appear[ed] to be a . . . firearm." Stuckey, 878 F.3d at 66. The defendant in Lassend contended that, because a defendant could be convicted under subsection (4) where he himself did not commit or intend to commit -- rather, his accomplice did -- the aggravated conduct that qualifies as "violent force," and thus, did not "intend the use of violent force," subsection (4) could not be a crime of violence according to Leocal and Johnson. Lassend, 898 F.3d at 130-33. But we rejected that premise, determining that the intentional forcible taking satisfied Leocal's mens rea requirement, while Johnson "separately" required that the crime involve violent force, which the display of a firearm in the course of a robbery by an accomplice satisfied. Id. at 131-32. We reasoned in part that such an interpretation of Leocal and Johnson comported with traditional "accomplice-liability principles." Lassend, 898 F.3d at 131-32.

To the extent that Hudson was premised on the distinction between Leocal and Johnson discussed in Lassend -- and there is no suggestion in the decision that it was -- Borden does not speak to that relationship. Again, Borden merely answers the question, "reserved in . . . Leocal" that "the elements clause exclude[s] reckless conduct." Borden, 141 S. Ct. at 1825, 1829 n.6. The relationship between Leocal and Johnson thus remains an open

- 17 -

question (and in this circuit, we will continue to follow Lassend until instructed otherwise).

In summary, because Williams, through his example, is merely contending that Hudson (and other precedents of our court) are wrong, and there has not been an intervening change of law that undermines it, we need not (and cannot) decide the merits of that contention here.[6]  Accordingly, we conclude that Williams's Massachusetts ADW conviction qualified as a crime of violence under §4B1.2.

B. Maine RDW

i. Threshold Issues

As an initial matter, the parties dispute what exactly Williams was convicted of in the Maine proceedings.  Williams contends that he was not convicted of Maine RDW, as the government contends, but rather of robbery in violation of § 651(1)(B), which the parties agree is not a crime of violence.  He also contends that it was impermissible for the court to look to his plea colloquy in the Maine proceedings to determine his crime of

_____

[6] Williams also makes contentions as to why Hudson was wrong that are seemingly based in Massachusetts decisional law.  But all of the cases he relies on predate our decision in Hudson, or do not represent a relevant change of law.  See San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010) (noting that exceptions to the law of the circuit doctrine only come into play, if at all, because of persuasive or controlling authority postdating the relevant panel decision).

- 18 -

conviction.

The applicable version of § 1252(4), since repealed, states that "[i]f the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be."

The applicable version of § 651(1) reads in relevant part as follows:

> 1.  A person is guilty of robbery if the person commits or attempts to commit theft and at the time of the person's actions . . .
> B.  The actor threatens to use force against any person present with the intent:
> (1) To prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
> (2) To compel the person in control of the property to give it up or to engage in other conduct that aids in the taking or carrying away of the property.
> Violation of this paragraph is a Class B crime;
> . . .
> E. The actor is armed with a dangerous weapon in the course of a robbery as defined in [paragraph B, among others] or knows that the accomplice is so armed.  Violation of this paragraph is a Class A crime.

Williams was originally indicted for violating § 651(1)(E) and Me. Rev. Stat. Ann. tit. 17-A, § 1252(5).  Section 1252(5), since repealed, sets a mandatory minimum sentence of 4 years for a conviction of a Class A crime with the use of a firearm against a person.  However, the indictment was then amended to

- 19 -

"delete" language from the robbery count indicating that "Williams or an accomplice to his knowledge was armed with a firearm in the course of the robbery." The amendment stated that Williams "now stands charged with" "robbery, Class B, § 651(B)(1) [a statute which does not exist]." That same deletion was made to the other charges in the indictment, except that for those charges, "with use of a dangerous weapon" was also added. At his plea hearing, the district court stated the following to Williams:

> In Count, um, 2 which is Robbery, Class B, the State would have to prove that on or about January 14, 2013 in Auburn, that you used a dangerous weapon and committed or attempted to commit theft from [the victim] and at that time you threatened to use force against [the victim], who was present, with the intent to prevent or overcome resistance to the [] taking of property, or the retention of the property immediately after the taking, or to compel the person in control of the property to give it up or to engage in other conduct which aided in the taking and carrying away of that property. Do you understand that I have to prove each and every element of that charge beyond a reasonable doubt?
>
> Defendant: Yes, Ma'am.

The court also later asked the prosecutor to "tell [it] what evidence would be presented if this matter went to trial," which the prosecutor did.

The judgment and commitment in turn describes the offense as "[r]obbery (with a dangerous weapon)" in violation of § 651(1)(E). Everything is typed, except that someone has crossed

- 20 -

out the "A" next to the "Class" corresponding to the robbery charge, and handwritten in its place "B."

The district court examined this admittedly confusing record to determine what crime Williams was convicted of. It concluded that he was in fact convicted of Maine RDW based on the court's exchange with him at his plea hearing, in which it asked if he understood that the government would "have to prove that . . . [he] used a dangerous weapon and committed or attempted to commit theft [under § 651(1)(B)]" to which he answered yes.

Williams first contends that, even if he was convicted of Maine RDW, it was impermissible for the court to look to the plea hearing to determine that fact. Among other reasons, he contends that it was impermissible because, even assuming that he was convicted of Maine RDW, "[s]ection 1252(4) is indivisible with respect to mens rea and the dangerous weapon used"; thus, the "modified categorical approach" does not apply, and the court should have simply asked whether all crimes charged with § 1252(4) are categorically crimes of violence. And, he contends that the correct answer to that question is no, because a crime charged with § 1252(4) can include a crime that criminalizes reckless conduct and, according to him, can be committed with an object that does not satisfy Johnson's violent force requirement.

Courts may apply the "modified categorical approach" when a statute is divisible, meaning it "list[s] elements in the

- 21 -

alternative, . . . thereby defin[ing] multiple crimes," to figure out "which of the alternative elements listed . . . was integral to the defendant's conviction." Mathis v. United States, 579 U.S. 500, 505 (2016). Under the modified categorical approach, the court is permitted to look to a "limited class of [so-called 'Shepard'] documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. at 505-06; see also United States v. García-Cartagena, 953 F.3d 14, 20 (1st Cir. 2020) (noting that a judgment is a Shepard document). However, if the statute under which the defendant was convicted has a single, indivisible set of elements defining a "single crime," Mathis, 579 U.S. at 504-05, a court may not apply the modified categorical approach, and must simply ask whether the crime defined by the statute is categorically a crime of violence see Descamps v. United States, 570 U.S. 254, 258 (2013). Williams thus contends that it was impermissible for the court to look to his plea hearing because § 1252(4) is indivisible with respect to the dangerous weapon used and mens rea.

But that contention is not aligned with what happened here. The district court in this case did not look to the plea hearing as part of an application of the modified categorical approach to determine which mens rea or dangerous weapon was required by the crime of conviction. Rather, it looked to the

- 22 -

record documents solely to determine whether Williams was convicted of § 651(1)(B), as he contended, or of §§ 1252(4) and 651(1)(B), as the government contended. Because both parties agreed that Williams was at least convicted of § 651(1)(B), its sole focus was on determining whether Williams was also convicted of the enhancement in § 1252(4). And that was permissible regardless of whether § 1252(4) is indivisible as to the mens rea and dangerous weapon elements. See Pereida v. Wilkinson, 141 S. Ct. 754, 762-63 (2021) ("Some statutes state only a single crime, often making it a simple thing for a judge to conclude from a defendant's criminal records that he was convicted of violating statute x and thus necessarily convicted of crime x." (emphasis added)); United States v. Bryant, 571 F.3d 147, 154-59 (1st Cir. 2009) (establishing the fact of a defendant's conviction under a statute first, and then applying the modified categorical approach to that statute).

If § 1252(4) is indivisible as to the mens rea and the dangerous weapon elements, as Williams contends, then it is true that the district court could not have further inquired into those means that Williams used to commit the offense. But the district court never looked at the Shepard documents to determine which mens rea was involved or which dangerous weapon was used. Section 1252(4) "does not create a separate offense" nor does it "requir[e] a separate culpable mental state"; the only thing it does is add

- 23 -

an element to the offense at issue -- that the "offense [was] committed with the use of a dangerous weapon." State v. Seymour, 461 A.2d 1060, 1061 (Me. 1983) (emphasis added). Thus, because § 1252(4) does not contain a mens rea requirement to begin with (the Class B, C, D, or E crime to which it attaches -- here, § 651 -- does), the district court could not have looked to the Shepard documents to determine which mens rea in § 1252(4) applied. Moreover, in this case, because the parties agreed that Williams was at the very least convicted of § 651(1)(B), the district court also did not have to look to the Shepard documents to determine which subsection of 651 he was convicted of.[7]

Nor did the court look to the record documents to determine what type of dangerous weapon was used. Here, again, Williams appears to contend that the dangerous weapons listed in Me. Rev. Stat. Ann. tit. 17-A, § 2(9)(A) are "factual means" of committing a "single element," and thus, the court could not inquire into which type of weapon he used. But the district court did not make such an inquiry -- once it determined that Williams was convicted of §§ 651(1)(B) and 1252(4), it simply asked whether robbery with the use of a dangerous weapon (not robbery with the use of a gun, or some other specific weapon) was categorically a

---

[7] We note, however, that it could have, because that statute is a divisible statute. See United States v. Mulkern, 854 F.3d 87, 91 (1st Cir. 2017).

crime of violence.  Williams, 2017 WL 3485562, at *3-5.[8]

Williams next contends that, in any event, it was improper for the district court to rely on the transcript of the

[8] Williams further contends that § 1252(4) does not "alter the elements of the substantive offense" at all because it is a sentencing enhancement -- thus, we may not consider it, because courts must "consider [only] the elements of the crime of conviction, not the facts of how it was committed." United States v. Taylor, 848 F.3d 476, 491 (1st Cir. 2017); see also Delgado-Sánchez, 849 F.3d at 9 (court may not consider factual means, only elements of the crime). But § 1252(4) is an element of the crime with which it is charged.  "If statutory alternatives carry different punishments, then under Apprendi, they must be elements" that the jury must agree upon.  Mathis, 579 U.S. at 518.  Under Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).  Section 1252(4) states that if the crime at issue "was committed with the use of a dangerous weapon then the sentencing class for such crime is one higher than it would otherwise be." § 1252(4) (emphasis added).  Section 651(1)(B) is a "Class B crime," and in the case of a Class B crime, the period of imprisonment cannot exceed "10 years."  § 1252(2).  On the other hand, the period of imprisonment for a Class A crime "cannot exceed 30 years." Id.  Accordingly, the use of a dangerous weapon under § 1252(4) is an "element" in this case -- not an alternative factual means of committing § 651(1)(B) -- because it increases the penalty beyond the prescribed statutory maximum.

Caselaw from the Supreme Court of Maine also supports that conclusion.  In State v. Kline, a defendant appealed from a conviction for "reckless conduct with a dangerous weapon" following a jury trial.  66 A.3d 581, 582 (Me. 2013) (citations omitted); see also § 1252(4)(2012) (substantively the same as the version applicable in this case).  Among other things, the court found that "[c]ontrary to Kline's contentions, the evidence was sufficient for the jury to have rationally found each element of the offense beyond a reasonable doubt" and cited "17-A M.R.S. §§ 211(1), 1252(4) . . . ."  Kline, 66 A.3d at 584 (emphasis added).  Thus, Kline also suggests that the use of a dangerous weapon is an "element" that the jury must agree upon.

- 25 -

state court plea hearing to determine what he was convicted of because it was an "Alford-type plea."

The "distinguishing feature of an Alford plea is that the defendant does not confirm the factual basis underlying his plea." United States v. King, 673 F.3d 274, 281 (4th Cir. 2012) (quotations omitted). However, it is still a conviction like any other, because "a strong factual basis for guilt is an essential part of an Alford plea." Id. at 282 (quotations omitted). The Sixth Circuit in United States v. Phillips thus distinguished "reliance on the factual basis of the plea provided by the prosecutor," which is impermissible in applying the modified categorical approach to an Alford-type plea, from "reliance on the elements of the charge," which is permissible. 768 F. App'x 474, 479 (6th Cir. 2019) (quotations omitted). It noted that "although [defendant] was permitted to enter an Alford plea and therefore did not admit the factual basis of his conviction, the state court [had] explained the elements of his convicted offense in the plea colloquy by noting what the prosecution would have to prove." Id. at 477-78 (emphasis in original). On that basis, it determined that the plea colloquy was "clear" as to which part of a divisible statute he was convicted of. Id. at 479.

As in Phillips, the district court here relied on the state court's statement of the elements the state would have to prove Williams committed, not on the prosecutor or defense

counsel's explanation of the factual basis for his plea.  A defendant that pleads guilty pursuant to an Alford-type plea still admits the elements of the offense.  See id. at 479.  Thus, it was permissible for the district court to review the state court's colloquy with Williams concerning the elements to which he was pleading guilty.

Finally, the district court was correct in determining that the record showed that Williams was convicted of Maine RDW. The state sentencing court asked whether Williams understood that the government would have to prove that he used a dangerous weapon and also certain other items that precisely tracked the language of § 651(1)(B), and he said that he did.  Neither party contends that Williams was convicted of armed robbery under § 651(1)(E) -- that is, of being "armed with a dangerous weapon in the course of a robbery . . . or know[ing] that [an] accomplice is so armed." § 651(1)(E).  Thus, because of the reference to a dangerous weapon, the only other possible conclusion was that Williams was convicted of Maine RDW in violation of §§ 651(1)(B) and 1252(4), and the district court was thus correct in reaching that conclusion.

ii.  Whether Maine RDW is a "Crime of Violence"

Having concluded that the district court did not err in finding that Williams was convicted of Maine RDW, we must next determine whether that crime satisfies §4B1.2's elements clause.

In United States v. Mulkern, we rejected the argument

- 27 -

that robbery under § 651(1)(C) satisfied ACCA's elements clause. 854 F.3d at 93. We reasoned that Maine's highest court had recognized that "any physical force" satisfies the "'physical force' element" in that subsection. Id. (emphasis in original) (first quoting Raymond v. State, 467 A.2d 161, 164-65 (Me. 1983); then quoting § 651(1)(C)) (emphasis in original). Although Mulkern did not directly address § 651(1)(B), the government and Williams agree that that subsection does not qualify under §4B1.2's elements clause for the same reasons. See also id. at 92-94 (noting that the defendant had equated the force in § 651(1)(B)(2) -- which he contended was his crime of conviction -- with the force in § 651(1)(C) -- which the government contended was his crime of conviction -- and thus only considering § 651(1)(C)).

The question is thus whether the addition of the dangerous weapon element in Maine RDW overcomes that conclusion. Although we previously have not decided the issue, with respect to Maine RDW, the issue is nearly identical to that raised in our prior consideration of Massachusetts ADW. And under the law of the circuit doctrine, newly constituted panels are constrained by prior panel decisions directly and "closely" on point. Hudson, 823 F.3d at 14-15 (quotations omitted). Specifically, Whindleton determined that "the element of a dangerous weapon" in Massachusetts ADW "imports the 'violent force' required by

- 28 -

Johnson" because "the harm threatened by an assault is far more violent than offensive touching when committed with a weapon that is designed to produce or used in a way that is capable of producing serious bodily harm or death." 797 F.3d at 114. That same logic applies to Maine RDW. Under Whindleton's reasoning, the threatened "force" referred to in § 651(1)(B) must be "far more violent," id., than "any physical force," Raymond, 467 A.2d at 164, if committed with a dangerous weapon. In addition, we have previously determined that "criminal threatening with a dangerous weapon" -- that is, "intentionally or knowingly plac[ing] another person in fear of imminent bodily injury with the use of a dangerous weapon" is a crime of violence under §4B1.2's elements clause because of the addition of the "dangerous weapon" element in § 1252(4). See United States v. Collins, 811 F.3d 63, 66-67 (1st Cir. 2016) (noting that "whatever [a case relied upon by defendant] may reveal about the proper definition of criminal threatening, it does not show that criminal threatening with a dangerous weapon is not a crime of violence" (emphasis added)).[9]

Williams contends, as he did with respect to Massachusetts ADW, that § 651(1)(B) only requires the "intent to

_____

[9] The defendant in Collins does not appear to have specifically contested whether the dangerous weapon in § 1252(4) is an "element" of a crime. However, as discussed, we find that it is.

use [some] force," which is not an intent to use or threaten violent force.  And as described above, Williams contends that Borden requires an intent to use or threaten violent force.  But Williams's arguments overlap completely with those he made with respect to Massachusetts ADW.  Accordingly, he has not shown why Hudson does not compel us to find that "the use or threat of physical force" in Maine RDW "[is] intentional," see Hudson, 823 F.3d at 17, if we cannot reconsider Hudson.

More specifically, by contending that § 651(1)(b) only requires the "intent to use [some] force," he implicitly acknowledges that Maine RDW requires intent.  The statute itself also compels such a conclusion -- as part of the crime, the actor must "threaten[] to use force against any person present with the intent" to, in essence, engage in conduct that aids in the taking or carrying away of the property.  See § 651(1)(B) (emphasis added).  And, in Hudson, we concluded that the threatened battery variant of Massachusetts ADW's intent requirement -- that "the defendant intended to place the victim in fear of an imminent battery" -- "fits squarely" within ACCA's definition of "threatened use" of physical force, which is similar to Maine RDW's intent requirement.  Hudson, 823 F.3d at 17 (quotations omitted).  Thus, because we are bound by Hudson, we must also reject Williams's arguments that Maine RDW lacks the requisite intent to qualify as a crime of violence under §4B1.2's elements clause.

Williams does make one unique contention as to why Maine RDW is not a crime of violence. He contends that, to commit Maine RDW, a defendant does not have to "use[] the dangerous weapon to effectuate the robbery"; for example, he could recklessly drive away from the robbery and thereby commit Maine RDW, because his car would qualify as the dangerous weapon. But the caselaw he cites is not about Maine RDW, but other crimes, and does not discuss the role that the dangerous weapon element must play in the offense. Seymour, 461 A.2d at 1060-61 (where defendant was charged with "reckless conduct with the use of a dangerous weapon" for, in effect, "forcing [the victim] off the road" and "ramming [the victim's car] in the rear and causing it to skid sideways" there was no obvious error in failure to instruct jury that defendant intended to use the car as a dangerous weapon); Me. Rev. Stat. Ann. tit. 17-A, § 211 (person guilty of reckless conduct where he or she "recklessly creates a substantial risk of bodily injury to another person"); United States v. Cunningham, 597 F. Supp. 2d 155, 156, 158 (D. Me. 2009) (finding that defendant's actions "constitute[d]" the crime of criminal mischief -- that is, the "intentional, knowing, or reckless damage to the property of another[,]" see Me. Rev. Stat. Ann. tit. 17-A, § 806(1)(A) -- with use of a dangerous weapon, § 1252(4), where he "[u]se[d] [his] motor vehicle at night as a battering ram to slam into a vehicle parked in a residential yard" knowing that his wife and son were

- 31 -

"somewhere in the vicinity" though not "precisely where they were").  In any event, the plain language of § 1252(4) appears to require that the defendant use the dangerous weapon to commit (or effectuate) his crime.  See § 1252(4) (requiring the state to prove that a crime was "committed with the use of a dangerous weapon" (emphasis added)).[10]  Nor does Williams make any textual argument based on the language of § 1252(4) to the contrary.  Finally, there is Maine caselaw indicating that the state must show that the defendant committed the crime at issue with the use of a dangerous weapon to prove he violated § 1252(4).  Cf. State v. Satow, 392 A.2d 546, 548-49, 548 n.2 (Me. 1978) (disagreeing with defendant's position that indictment failed to inform him that "the State was invoking . . . [Me. Rev. Stat. Ann. tit. 17-A, § 1252(5)]" -- which is, as relevant here, identical to § 1252(4) -- because it should have been plain to him based on its statement that the firearm was "pointed" at the victim that it alleged that the

---

[10] In explaining the elements of §§ 651(1)(B) and 1252(4) to Williams at his plea colloquy, the court stated in part that "[i]n Count, um, 2 which is Robbery, Class B, the State would have to prove that on or about January 14, 2013, in Auburn, that you used a dangerous weapon and committed or attempted to commit theft . . . ."  The court's use of "and" could suggest that a defendant merely has to have a weapon on him while committing the offense, but its choice of the word "use" suggests otherwise, and it likely misspoke.  In addition, the district court's statement of the elements is not controlling on us -- rather, we "glean the elements from the statute of conviction as interpreted by the state's highest court."  United States v. Velázquez, 777 F.3d 91, 95 (1st Cir. 2015).

firearm was not merely "possessed" but was "used" by defendant).[11]

Thus, our precedent leads us to conclude that Maine RDW is a "crime of violence" under §4B1.2's elements clause. Specifically, Williams's contentions that Maine RDW is not a crime of violence are identical -- with one exception that is without merit -- to those he makes with respect to Massachusetts ADW, which we previously concluded in Hudson is a crime of violence. And, as we have seen, Borden and Taylor did not represent an intervening change of law with respect to Hudson.

### III. Conclusion

Accordingly, for the foregoing reasons, we **affirm** Williams's sentence.

---

[11] We note, too, that in this context, "[t]o show that a particular reading of the statute is realistic," the defendant must "point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." United States v. Hill, 890 F.3d 51, 56 (2d Cir. 2018) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007) (quotations omitted)); accord Lassend, 898 F.3d at 127 (noting that the court need not decide whether "indirectly causing physical harm -- for example, deliberately withholding vital medicine" does not involve the use of violent force because the defendant had not "point[ed] . . . to a single New York case in which a conviction under [the statute at issue] ha[d] been obtained based on" that conduct).